IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THOMAS MARTINEZ										PLAINTIFF

VS.							CIVIL ACTION NO. 3:14cv810-CWR-FKB

UNITED STATES OF AMERICA, ET AL.							DEFENDANTS

REPORT AND RECOMMENDATION

Before the Court is the Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [41] filed by the remaining Defendants in this action. Plaintiff filed a Response [44], Defendants filed a Reply [47], and, without leave of Court, Plaintiff filed a "Sur Response" [48]. As set forth in the Report and Recommendation [32] entered previously in this case, and adopted by Order [36] in relevant part by the District Court, Martinez's sole remaining claim is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In sum, Martinez alleges that Defendants denied him adequate medical treatment related to an incident in which he injured his back while working at the Federal Correctional Complex located in Yazoo City, Mississippi ("FCC-Yazoo"). For the reasons set forth in this Report and Recommendation, the undersigned recommends that Defendants' Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be granted, and that this case be dismissed with prejudice.

I. Background

As set forth in detail in the Report and Recommendation [32], Martinez originally brought claims alleging that Defendants failed to provide him adequate medical care for a back injury he suffered on July 1, 2013, while working as a prisoner at FCC-Yazoo. In his original complaint, Martinez alleged claims based on the Federal Torts Claims Act, 28 U.S.C. § 2671, *et*

*seq*. He also brought claims pursuant to *Bivens* and argued that Defendants violated his constitutional rights guaranteed by the First, Fourth, Fifth, Eight, and Ninth Amendments. Defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment [22], and the undersigned recommended that the Motion be granted, except as to Martinez's Eighth Amendment *Bivens* denial of medical care claim. As to that claim, the undersigned found insufficient evidence supporting the defense of exhaustion of administrative remedies, as well as the merits.

The District Court adopted the Report and Recommendation in relevant part so that Martinez's sole remaining claim is that Defendants denied him adequate medical treatment based upon the Eighth Amendment, brought pursuant to *Bivens*. The remaining Defendants are Marcus Martin, Warden of FCC-Yazoo; Bonita S. Mosley, former Warden of FCC-Yazoo; Dr. Roberto Martinez, a primary care physician at FCC-Yazoo; Frank Silva, Unit Manager at FCC-Yazoo; Jack Joiner, Director of Safety Department at FCC-Yazoo; and Roy Russ, safety specialist at FCC-Yazoo.

Defendants' motion to dismiss, or in the alternative, motion for summary judgment, is now fully briefed. The Court therefore turns to consider the motion.

## II. Summary Judgment Standard

Because Defendants have submitted matters outside the pleadings in their Motion to Dismiss, or alternatively, Motion for Summary Judgment, the motion will be characterized as a motion for summary judgment and analyzed under those standards. *Johnson v. King*, 2010 WL 4638213, *1 (S.D. Miss. May 18, 2010)(citing *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991)).

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), cert. denied, 119 S.Ct. 618 (1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. "Federal summary judgment procedure requires the court to 'pierce through the pleadings and their adroit craftsmanship to reach the substance of the claim.'" *Hicks v. Brysch*, 989 F.Supp. 797, 806 (W.D. Tex. 1997)(citing *Tacon Mech. Contractors v. Aetna Cas. and Sur. Co.*, 65 F.3d 486, 488 (5th Cir. 1995)). The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

Martinez's *pro se* status does not lighten his burden of production at this stage of the litigation. Although the Fifth Circuit has adopted the rule that courts should liberally construe the pleadings of a *pro se* plaintiff, *Perez v. U.S.,* 312 F.3d 191, 194-95 (5th Cir. 2002), the Court is not required to search for or try to create causes of actions for *pro se* plaintiffs. *Borninski v. Williamson,* 3:02-cv-1014-L, 2005 WL 1206872, at *9 (N.D.Tex. May 17, 2005). A liberal

3

reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts. *See Callahan v. C.I.R.,* Civ. A. 99-0295-C-M1, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000); *Drake v. Principi*, 2006 WL 2827702, *6 (S.D. Miss. Sept. 30, 2006).

Defendants have raised the defense of qualified immunity. "[I]f it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s] [are] entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1995)(citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)).

### III. Discussion

To succeed on a *Bivens* cause of action, a plaintiff must allege and demonstrate that a constitutional violation occurred. *Garcia v. United States*, 666 F.2d 960, 961 (5th Cir. 1982). "A *Bivens* action is analogous to an action under § 1983 except that § 1983 applies to constitutional violations by state, rather than federal actors; this court does not distinguish between *Bivens* and § 1983 claims." *Murrell v. Chandler*, 277 Fed. App'x 341 (5th Cir. 2008). "[A] *Bivens* action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity." *Pollack v. Meese*, 737 F.Supp. 663 (D. D.C. 1990).

Considering this framework, Defendants have argued for dismissal on several bases, which the Court now addresses.

A. <u>Claims against Warden Martin and former Warden Mosley</u>

Defendants assert that Martinez's claims against Martin and Mosley fail because they are based on *respondeat superior*, and he has failed to allege personal involvement by either Martin or Mosley. It is well settled that under § 1983, supervisory officials cannot be held vicariously liable for their subordinates' actions. *See Monell v. Department of Social Servs.,* 436 U.S. 658,

4

691-95 (1978); *Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir.1985) (per curiam). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).

Indeed, a review of the Complaint demonstrates that Martinez has failed to allege specific personal involvement by either Martin or Mosley in the provision of his health care. Although Martin and Mosley are named as defendants, Plaintiff fails to allege any facts supporting a claim of denial of adequate medical care against them. [1] at 9-13. Even if Martinez might argue that Martin and Mosley failed to supervise the employees providing his medical care, he has provided no evidence in support of such a claim. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (explaining that supervisory liability under § 1983 requires proof that the supervisor failed to supervise the officer involved; that there is a causal connection between the alleged failure to supervise and the constitutional violation; and that the failure to supervise constituted deliberate indifference to the plaintiff's constitutional rights). Martinez has failed to come forward with any evidence to support his claims of their involvement other than his unsupported assertions, [44] at 5, which are insufficient to defeat summary judgment. *Little*, 37 F.3d at 1075.

Even if the Court broadly construes Martinez's complaint to assert *Bivens* claims against the wardens because of the role they play in evaluating administrative remedy claims and tort claims, these claims fail to rise to the level of a constitutional violation. *Bivens* or § 1983 liability cannot be premised upon the role a warden plays in the evaluation of administrative remedies. *See Geiger v. Jowers*, 404 F.3d 371, 373-374 (5th Cir. 2005)(finding that a prisoner

"does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction."); *see also Jones v. Livingston*, 2005 WL 3618316, at *3 (S.D. Tex. Jan. 6, 2005)("[T]he fact that [the warden] did not respond to, or denied, plaintiff's grievances does not, alone, state a claim.").

Finally, broadly construing his complaint, Martinez alleges, in general, that the Department of Justice and the Bureau of Prisons have instituted a "custom, practice, or policy of protecting employees . . . who . . . neglect[] inmates' care." *Id.* at 8. There is no competent evidence in the record to support this allegation, if indeed it is directed at Martin and Mosley. Accordingly, the Court concludes that Martinez has failed to substantiate allegations as to any unconstitutional policies, and thus, this claim should be dismissed. *See Mouille*, 977 F.2d at 929.

For the foregoing reasons, the undersigned recommends that summary judgment be granted in favor of Martin and Mosley.

B. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to his Eighth Amendment claim for denial of medical care. While they admit that he exhausted his administrative remedies as to a request for an MRI, [42] at 6, they argue that his Eighth Amendment claim, as set forth in his original complaint, did not allege a denial of medical care congruent with the claims he now asserts. See [1] at 18-20. Defendants reason that his administrative remedy regarding the MRI was limited solely to the request for the MRI and, therefore, is not broad enough to encompass his denial of medical care claims. In addition, Defendants point out that the portion of the complaint discussing *Bivens* claims made no reference to medical care. *Id.* Defendants argue that instead of pursuing his medical care claims

under *Bivens*, Plaintiff chose to pursue his medical care claims under the FTCA, and his FTCA claim has been dismissed.

While the Court is not in the business of "search[ing] for or try[ing] to create causes of actions" for *pro se* plaintiffs, it finds that, in an abundance of caution, and consistent with the findings of the Report and Recommendation [32], the complaint should be liberally construed to allege an Eighth Amendment claim of denial of medical care. Furthermore, in an abundance of caution, considering the unique facts of this case, the Court finds that the administrative remedy for a request for an MRI satisfies the exhaustion requirements for Martinez's Eighth Amendment denial of medical care claim, as the request for an MRI was a focus of his request for medical care for his back injury. Accordingly, the undersigned recommends denial of Defendants' motion for summary judgment on this issue.

C. Qualified Immunity

The remaining Defendants argue that they are entitled to qualified immunity. "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bishop v. Arcuri*, 674 F.3d 456, 460 (5th Cir. 2012)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the defense of qualified immunity is raised, a plaintiff bears the burden of showing that the facts alleged demonstrate that the defendant violated a constitutional right, and that the right was clearly established at the time of the violation. *Davila v. United States*, 713 F.3d 248, 257 (5th Cir. 2013). Moreover, "the doctrine of qualified immunity protects government officials from civil damages liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places

7

the constitutional question *beyond debate*." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)(emphasis in original). It bears repeating that "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s] [are] entitled to dismissal on that basis." *Wells*, 45 F.3d at 93.

Plaintiff's constitutional protections flow from the Eight Amendment's prohibition against cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832-833 (1994). The Eighth Amendment requires that prisoners receive adequate food, clothing, shelter, medical care, and reasonable measures to guarantee their safety. *Id. Farmer* further elaborates on this standard, as follows:

> Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious[;]" a prison official's act or omission must result in the denial of the "minimal civilized measure of life's necessities.". . . .[Second,] [t]o violate the Cruel and Unusual Punishments clause, a prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health and safety.

*Id.* at 834 (citations omitted). Adopting an objective test for the standard of deliberate indifference, the Supreme Court stated that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. "In order to show that his medical care violated the Eighth Amendment, [the plaintiff] must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997)(citing

8

*Estelle v. Gamble*, 429 U.S. 97 (1976)).

      1.     <u>Dr. Roberto Martinez</u>

Plaintiff has named "Dr. R. Martinez," whom he describes as "the primary care physician assigned to Plaintiff," as a Defendant. [1] at 3. In the complaint, Plaintiff fails to make specific factual allegations supporting a claim of denial of medical attention against Dr. R. Martinez and alleges that Dr. R. Martinez is being sued in "her individual capacity for civil rights violations and conspiracy to violate the civil rights of Plaintiff." *Id.* at 3-4. Otherwise, the complaint makes only the factual allegation that on July 22, 2013, Plaintiff spoke to Dr. R. Martinez, and the doctor recommended that he "go to commissary and purchase some aspirin or Ibuprofen for Plaintiff's back pain." *Id.* at 12.

Dr. Roberto Martinez has filed an affidavit in support of the motion for summary judgment. [41-4]. Although Dr. Roberto Martinez admits that he was employed at FCC-Yazoo on July 1, 2013, he states that he never treated Plaintiff, and that he has no knowledge of Thomas Martinez or his injury. *Id.* A review of the medical records confirms that Dr. Roberto Martinez is not listed on any of the medical records as a treating physician.[1] Furthermore, the brief alleged encounter described in the complaint does not constitute deliberate indifference in that

---

[1] The records show that a "Dr. L. Martinez" is listed as a treating physician. "Dr. L. Martinez" is not named as a defendant, but was served with a summons by certified mail. [19] at 66-70. Giving a liberal construction of the pleadings, the undersigned treats this as an attempt to sue Dr. L. Martinez, especially since Plaintiff referred to Dr. R. Martinez as being sued in "her individual capacity," [1] at 3, and, whereas Dr. R. Martinez is a male, Dr. L. Martinez if a female. Nevertheless, the facts alleged in the complaint against this doctor fail to rise to the level of "deliberate indifference" required to state a constitutional claim. The record demonstrates that Dr. L. Martinez did not show "deliberate indifference" to Plaintiff. She examined Plaintiff on six different occasions between August 21, 2013, and March 17, 2014. [43] at 19, 37, 41, 42, 44, 54. During these examinations, Dr. L. Martinez prescribed pain medications for Plaintiff, ensured that he received x-rays for his back complaints, and, ultimately, on November 22, 2013, requested that he receive an MRI. *Id.* at 39. This course of treatment does not demonstrate deliberate indifference by Dr. L. Martinez. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

Dr. Roberto Martinez recommended treatment. Accordingly, summary judgment should be granted in favor of Dr. Roberto Martinez.

    2.    <u>Unit Manager Frank Silva</u>

Defendant Frank Silva, Martinez's unit manager, has also moved for summary judgment based on qualified immunity. In his affidavit, Silva declares that he does not recall Martinez ever complaining about an injury and, if Martinez had complained, Silva would have followed his usual procedure and directed him to sign up for sick call the next morning. [41-5]. He asserts that if Martinez's injury had appeared serious, he would have contacted the medical services directly to make an appointment for Martinez. *Id.* He further avers that he did not deny Martinez access to health care, nor did he disregard any serious medical condition. *Id.*

The complaint contains two brief factual allegations regarding encounters that Martinez had with Silva after his injury. Martinez alleges that he spoke with Silva on July 3, 2013, about his injury, but that Silva "dismissed his concerns and ordered him to return to his unit." [1] at 10. In a conversation that allegedly occurred on July 18, 2013, Martinez complained to Silva of his inability to receive treatment at the Health Services Unit on that date, but Martinez does not allege that Silva denied him medical attention. *Id.* at 11. In fact, Martinez alleges that Silva encouraged him to "write [the Health Services Unit] up." *Id.* In his response to the Motion, Martinez simply asserts that he spoke with Silva concerning his injury and the need for medical care, but that his concerns were dismissed by Silva. [44] at 3.

Even when the Court views these allegations in the light most favorable to Plaintiff, Silva's reactions to Martinez's complaints do not rise to the level of deliberate indifference. Although Silva's reactions could be described as "dismiss[ive]" of Martinez's complaints, Silva

did not deny health care or medical treatment to Martinez on either July 3 or July 18, 2013. On the contrary, even though Silva "dismissed" Martinez's complaints, Martinez obtained x-rays from Bureau Staff on July 3, 2013, the date of his injury. Furthermore, in a "Response to Attempt at Informal Resolution" submitted by Martinez in response to the motion, Silva expressed concern about Martinez's well-being, but advised Martinez that he was not medically trained, and further stated that, on July 3 and July 18, he had advised Martinez to seek treatment from medical staff. [44-1] at 63. Accordingly, Martinez has failed to establish that Silva's actions rose to the level of deliberate indifference, and summary judgment should be granted in favor of Silva on Martinez's *Bivens* claim alleging denial of adequate medical care.

    3.        Jack Joiner and Roy Russ

Finally, the Court turns to Plaintiff's claims against Defendants Jack Joiner and Roy Russ. By Martinez's own admission, Joiner and Russ played no role in the provision of medical care to him. Plaintiff alleges that Joiner is the Safety Director for FCC-Yazoo and that Russ is a safety specialist at FCC-Yazoo. [1] at 4. Martinez alleges that they conducted an investigation into the incident and made changes in the work place to prevent future injuries to prisoner workers. *Id.* at 11-12.[2] Both Joiner and Russ have submitted affidavits stating that they did not deny healthcare to Martinez, nor did they disregard any serious medical conditions. [41-6], [41-7]. Martinez has failed to dispute these affidavits, much less come forward with any competent evidence in opposition thereto. Accordingly, summary judgment should be granted in favor of Joiner and Russ on Martinez's remaining *Bivens* claim of denial of medical attention.

---

[2] Martinez also makes a brief allegation that Joiner attempted to persuade him not to pursue a claim for his injuries, which could be construed as an attempt to deny him access to the courts. *Id.* at 13. However, the Court previously dismissed Plaintiff's *Bivens* claims of denial of access to the courts. [32] at 14-15.

11

## IV. Conclusion

Accordingly, for the reasons discussed above, the undersigned recommends that Defendants Martin, Mosely, Dr. Roberto Martinez, Silva, Joiner, and Russ be granted summary judgment as to Martinez's *Bivens* claims alleging a denial of medical care.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 31st day of July, 2017.

    /s/ F. Keith Ball
    UNITED STATES MAGISTRATE JUDGE